UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| NURJHAN B. GOVAN, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 2:02CV72 JCH |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment, filed September 30, 2005. (Doc. No. 88). The matter is fully briefed and ready for disposition.

## BACKGROUND

By way of background, Plaintiff Nurjhan Govan ("Govan" or "Plaintiff"), an African-American female, was formerly employed with the Missouri Department of Corrections (the "Department") as a chaplain, at the Moberly Correctional Center ("MCC"), in Moberly, Missouri. (Fourth Amended Compl., ¶ 2; Defendants' Statement of Uncontroverted Facts ("Defendants' Facts"), ¶ 1, citing Deposition of Nurjhan Govan ("Govan Dep."), PP. 9-10). Govan began working at MCC on a part-time basis on February 13, 1996. (Defendants' Facts, ¶ 2, citing Affidavit of Richard Enyard ("Enyard Aff."), ¶ 3). Govan became a full-time chaplain at MCC on July 2, 1999. (Id., ¶ 7).

In 2001, Govan was investigated regarding alleged inappropriate contact with an offender. (Defendants' Facts, ¶ 42, citing Affidavit of Edward Robinson ("Robinson Aff."), Exh. 1). A report

regarding this investigation was prepared, in which it was stated that Govan had admitted she gave an offender certain of her personal legal information. (Id., ¶ 43).[1]

Govan's employment with MCC was terminated on October 22, 2001. (Defendants' Facts, ¶ 45). The reasons given for her termination were that Govan had discussed personal legal issues with an offender, and had allowed her personal legal information to be in the possession of the offender. (Id., citing Affidavit of Defendant James Gammon, Exh. A). Govan was informed in the letter notifying her of her discharge that she could request a conference with the Acting Division Director for Human Services, and could present information for further review of her dismissal. (Id., ¶ 54).

Govan filed her Fourth Amended Complaint ("Complaint") in this matter on November 23, 2004. (Doc. No. 77). In her Complaint, Govan names as Defendants the Department; James Gammon ("Gammon"), the Superintendent of MCC; Teresa Thornburg ("Thornburg"), an Associate Superintendent of MCC; Sherry Dunseith ("Dunseith"), an Assistant Superintendent of MCC; and Les Balty ("Balty"), a former Human Relations Officer at MCC. (Compl., ¶¶ 3-7). Govan alleges the following in her Complaint: Race and Sex Discrimination in Employment, in violation of both Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII), and the Missouri Human Rights Act, Chapter 213 RSMo ("MHRA") (Counts I and II); Retaliation, in violation of both Title VII and the MHRA (Counts III and IV); Violation of Due Process Rights (Count V); Conspiracy to Violate Due Process Rights (Count VI); Defamation (Count VII); and

---

[1] Govan denies making the admission, and further denies having given an offender personal legal information. (Plaintiff's Response to Defendants' Statement of Uncontroverted Facts ("Plaintiff's Facts"), ¶ 43, citing Govan Dep., P. 128).

Violation of Whistleblower Statute--Section 105.055 RSMo (Count VIII).[2]  As stated above, Defendants filed the instant Motion for Summary Judgment on September 30, 2005, asserting that there exist no genuine issues of material fact, and they are entitled to judgment as a matter of law on all Govan's claims.  (Doc. No. 88).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986).  The substantive law determines which facts are critical and which are irrelevant.  Only disputes over facts that might affect the outcome will properly preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings.  Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor.  Anderson,

---

[2] Plaintiff seeks relief against Defendants Gammon, Thornburg, Dunseith, and Balty in their official capacities in every count.  Plaintiff seeks relief against these Defendants in their individual capacities in Counts VI and VII only.

477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### I.    Gender And Race Discrimination

As stated above, in her Complaint, Govan alleges unlawful discrimination on the bases of gender and race, in violation of Title VII and the MHRA.[3] (Compl., ¶¶ 11-17). Because she lacks direct evidence of discrimination, Govan's Title VII claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06, 93 S.Ct. 1817, 1823-26, 36 L.Ed.2d 668 (1973). Kim v. Nash Finch Co., 123 F.3d 1046, 1056 (8th Cir. 1997). Under this framework, Govan has the initial burden of establishing a prima facie case of discrimination. Id. In order to present a prima facie case of gender and/or race discrimination, Govan must show: "(1) that [s]he is a member of a protected class, (2) that [s]he was meeting the employer's legitimate job expectations, (3) that [s]he suffered an adverse employment action, and (4) that similarly situated employees outside the protected class were treated differently." Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004), citing Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000).

If Govan is successful in establishing the prima facie case, a rebuttable presumption of discrimination arises; the burden then shifts to Defendants, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action. Kim v. Nash Finch Co., 123 F.3d at 1056 (citation omitted). Once Defendants articulate such a reason, the presumption of discrimination

---

[3] Claims of race and gender discrimination under Title VII and the MHRA are determined using the same analysis. Evans v. Siegel-Robert, Inc., 139 F.Supp.2d 1120, 1124 (E.D. Mo. 2001) (citation omitted).

disappears, and Govan must prove that Defendants' proffered reason is merely a pretext for discrimination.  Tolen v. Ashcroft, 377 F.3d at 882 (citation omitted).

In her Complaint, Govan enumerates numerous examples of disparate treatment to which she allegedly was subjected.  (Compl., ¶¶ 14, 16).  The Court will address Plaintiff's allegations in turn.

### A. Discrimination In The Terms And Conditions Of Employment

In her Complaint, Govan alleges she was subjected to numerous examples of discrimination in the terms and conditions of her employment, as follows:

(a) Plaintiff's purchase order requests for items and materials for use by predominantly black inmate chapel groups or volunteers in correction were denied when purchase order requests of similarly situated white male chaplains were routinely approved.

(b) Plaintiff's requisitions for the purchase of Bible study and counseling materials for use by predominantly black inmate chapel groups or volunteers in correction were denied when purchase order requests of similarly situated white male chaplains were routinely approved.

(c) Plaintiff was denied the use of the photocopy machine in the prison library while similarly situated white male chaplains were allowed use of this equipment.

(d) Attendance of chapel activities supervised by Plaintiff was discouraged in that black inmates known to frequent the chapel for activities supervised by Plaintiff were stopped en route, harassed, written up and/or sent to solitary confinement by custody staff without cause and/or in a greater proportion than those inmates who were known to frequent the chapel for activities supervised by similar[ly] situat[ed] white male chaplains.

(e) In response to Plaintiff's efforts to involve more predominantly Black churches in chapel programs and activities, Defendants instituted policy changes which stifled Plaintiff's efforts to do so.

(f) Plaintiff was denied access to resources made available to similarly situated white male chaplains, such as, musical instruments, computer, computer software and public address components to enhance worship services and programming in worship.

(g) Plaintiff was not allowed to fill the position of an inmate clerical assistant even though Plaintiff was advised, prior to her hiring and after her hiring, that such

an assistant would be provided to her, while similarly situated white male chaplains were provided an inmate clerical assistant.

(h)     Plaintiff was provided pay that was less than that which was provided to similarly situated white male chaplains.

(i)     Plaintiff was provided use of a storage closet for her counseling office while similarly situated white male chaplains used finished office space.

(j)     An audio surveillance system was placed in Plaintiff's counseling office while no such system was placed in the counseling office of similarly situated white male chaplains.

(k)     Searches were made of Plaintiff's office space with items being removed by custody staff more frequently and with more stringent standards applied than searches of the office space of similarly situated white male chaplains.

(Compl., ¶ 14).

In their Motion for Summary Judgment, Defendants assert that with her allegations, Govan fails to establish a prima facie case of discrimination. (Defendants' Memorandum in Support of Motion for Summary Judgment ("Defendants' Memo in Support"), PP. 3-8). Specifically, Defendants maintain Plaintiff fails to allege she suffered an adverse employment action while employed with the Department. (Id.).

Upon consideration, the Court will deny this portion of Defendants' Motion for Summary Judgment, as a genuine issue remains with respect to whether Govan suffered discrimination at Defendants' hands. In other words, the Court cannot say as a matter of law that a reasonable jury, when viewing Plaintiff's allegations in their entirety, could not find that she was subjected to an adverse employment action while employed by the Department. For example, as noted above Plaintiff alleges that she was provided pay at a rate less than that which was provided to similarly situated white male chaplains. (Compl., ¶ 14(h)). Defendants deny this allegation, and submit an affidavit from Mr. Richard Enyard, the Human Resources Manager at the Department, to support their position. (Enyard Aff., ¶ 1). Attached as Exhibit A to Mr. Enyard's affidavit is a chart indicating the

salary history of those chaplains employed at MCC from 1996 through 2001. (Id., ¶ 4). Defendants rely on this chart to assert that all ministers, including Govan, were paid according to the same scale, based upon their years of service with the Department. (Defendants' Reply Memorandum in Support of Motion for Summary Judgment, P. 4).

The Court's review of the record, however, including the chart submitted by Mr. Enyard, reveals that a genuine issue of material fact remains with respect to whether Govan and the other chaplains were compensated in direct correlation to their years of service. Specifically, the Court notes that by the end of the year 2000, Govan and chaplain Doug Worsham were making the same salary, even though it appears Govan had been with the Department for two years longer than Worsham. (Enyard Aff., att. Exh. A). Such evidence suffices to fulfill Plaintiff's burden of presenting a prima facie case of discrimination, including the existence of an adverse employment action.[4] Defendants offer no explanation for the discrepancy in pay rates, and so Defendants' Motion for Summary Judgment on Plaintiff's claims of race and gender discrimination in the terms and conditions of her employment must be denied.[5]

### B.      Discriminatory Discharge

In her Complaint, Plaintiff alleges that Defendants discriminated against her when they terminated her employment in October, 2001. (Compl., ¶ 16). Upon consideration, however, the Court finds that with this allegation, Plaintiff fails to meet her burden of establishing element four of her prima facie case of discrimination; in other words, she fails to present evidence that similarly

---

[4] The Court will permit Plaintiff to testify regarding her other allegations of disparate treatment in the terms and conditions of her employment. Plaintiff is cautioned, however, that all such testimony will be subject to objections on the basis of hearsay.

[5] The Court's review of the record reveals that both statute of limitations and administrative exhaustion issues may exist in this case. Defendants do not argue such points in their motion, however, and so the Court will not address them here.

situated employees outside the protected class were treated more favorably. Under Eighth Circuit law, "[t]he test to determine whether employees are 'similarly situated' to warrant a comparison to a plaintiff is a 'rigorous' one." E.E.O.C. v. Kohler Co., 335 F.3d 766, 775 (8th Cir. 2003), citing Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994). "Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Cherry v. Ritenour School Dist., 361 F.3d 474, 479 (8th Cir. 2004) (internal quotations and citation omitted).

Upon review, the Court finds that Plaintiff fails to allege similarly situated employees exist with respect to the circumstances of her discharge. In other words, Plaintiff does not point to a single chaplain who was investigated for any reason, much less the same reason as Govan, who then was retained in his employment with the Department. Under these circumstances, Plaintiff fails to establish a prima facie case of race or gender discrimination with respect to her termination.

Furthermore, even assuming Plaintiff successfully presented a prima facie case of discrimination, Defendants present a legitimate, non-discriminatory reason for the employment action taken. Specifically, Defendants maintain their action was justified, as during the course of an investigation into allegations that she had inappropriate contact with an inmate, Govan admitted she had allowed an inmate to have possession of her personal legal documents. (Defendants' Memo in Support, P. 9, citing Robinson Aff., Exh. 1). This conduct constituted a violation of Department policy. (Id.). The Court thus finds that with this explanation, Defendants successfully have proffered a legitimate, non-discriminatory reason for their decision to terminate Plaintiff's employment.

In her response, Plaintiff counters that Defendants' asserted reason for her termination was merely a pretext for unlawful discrimination. (Plaintiff's Memorandum in Opposition of Defendants' Motion for Summary Judgment ("Plaintiff's Opp."), P. 7). Specifically, Govan asserts the statements

she made to investigators were "open to multiple interpretations," as the Division of Employment Security later found the allegations of her misconduct were unsupported by any first-hand evidence. (Id.).

Upon consideration, the Court finds Plaintiff has failed to present evidence sufficient to demonstrate that Defendants' stated reason for the employment decision was pretextual. The Court notes that while a different decisionmaker in a different proceeding may have reached a different conclusion, the issue here is whether Defendants were justified in reaching the conclusion they did at the time they fired Govan. See McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 799 (7th Cir. 1997). The record before the Court does not place in doubt Defendants' contention they made a good-faith finding that Plaintiff had violated Department policy, and the estimation of a third party is not relevant to that determination. Id. Plaintiff thus fails to meet her burden under the third stage of McDonnell Douglas, and so her claims of race and gender discrimination with respect to her termination must be dismissed.

## II.    Retaliation

In Counts III and IV of her Complaint, Plaintiff alleges she was fired in retaliation for filing complaints of disparate treatment during her employment with the Department. (Compl., ¶¶ 18-22). Title VII makes it unlawful for an employer to discriminate against an employee, "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The McDonnell Douglas analytical framework applies to retaliation claims brought under Title VII.[6] Kim v. Nash Finch Co., 123 F.3d

---

[6] The same standards apply to retaliation claims under the MHRA. LaCroix v. Sears, Roebuck, and Co., 240 F.3d 688, 691 (8th Cir. 2001) (citation omitted).

at 1060 (citations omitted). In order to establish a prima facie case of retaliation under Title VII, Govan must show: "(1) she engaged in statutorily protected activity; (2) an adverse employment action was taken against her; and (3) a causal connection between the two events." LaCroix, 240 F.3d at 691 (citation omitted). Defendants may then rebut Plaintiff's case by advancing a legitimate, nonretaliatory reason for the adverse employment action. Rheineck v. Hutchinson Technology, Inc., 261 F.3d 751, 757 (8th Cir. 2001) (citation omitted). If Defendants make this showing, Govan must show that Defendants' proffered reason was a pretext for illegal discrimination. Id. (citation omitted).

Upon consideration, the Court finds that Plaintiff fails to establish a prima facie case of retaliatory discrimination. Specifically, the Court notes that Plaintiff admittedly began complaining about the conditions of her employment shortly after she began working at MCC, and reported the allegedly disparate treatment to the EEOC within the first year of her employment. (Plaintiff's Opp., P. 8). Despite her extensive involvement in protected activity, Plaintiff was hired as a full-time employee at MCC in 1999. (Defendants' Facts, ¶ 7). The Court thus cannot find a causal connection between the ongoing complaints and Plaintiff's eventual termination.

Furthermore, even assuming Plaintiff successfully presented a prima facie case of retaliatory discrimination, her cause of action nevertheless fails for the reasons discussed in section I(B), supra; in other words, Defendants successfully presented a legitimate, non-discriminatory reason for the termination, and Plaintiff fails to show the articulated reason was merely a pretext for unlawful discrimination. Defendants' Motion for Summary Judgment on Counts III and IV of Plaintiff's Complaint will therefore be granted.

III. **Violation Of Due Process**

In Count V of her Complaint, Plaintiff alleges Defendants violated her Fourteenth Amendment right to due process, as follows:

24.     Plaintiff denied those allegations regarding inappropriate sexual contact with an inmate and use of inmate clerical services for personal legal matters.

25.     Those allegations made by Defendant [the Department], by its agents, and Gammon, Thornburg, Dunseith, and Balty seriously damaged Plaintiff's standing in the community and foreclosed other employment opportunities.

26.     Plaintiff was entitled to notice and a name-clearing hearing when she was discharged under circumstances imposing a stigma on her professional reputation.

27.     Defendant[s] denied Plaintiff notice and an opportunity for a name-clearing hearing.

28.     Plaintiff was thereby denied due process based on her protected liberty interest.

(Compl., ¶¶ 24-28).  In Count V, Plaintiff seeks relief in the form of compensatory and punitive damages from the Department, and from Defendants Gammon, Thornburg, Dunseith, and Balty in their official capacities.  (Compl., P. 8).

In their Motion for Summary Judgment, Defendants first assert that the Eleventh Amendment bars Plaintiff's §1983 claim against the Department.  (Defendants' Memo in Support, P. 11).  The Eighth Circuit has held that, "[t]he Eleventh Amendment bars a citizen from bringing suit for monetary damages against a state in federal court."[7]  Barnes v. State of Missouri, 960 F.2d 63, 64 (8th Cir. 1992), citing Welch v. Texas Dep't of Hwys. & Public Transp., 483 U.S. 468, 472, 107

---

[7] While Plaintiff here sues the Missouri Department of Corrections, rather than the State of Missouri itself, "State agencies may assert the Eleventh Amendment immunity of the State."  Texas Community Bank, N.A. v. Missouri Dept. of Social Services, Div. of Medical Services, 232 F.3d 942, 943 (8th Cir. 2000), citing Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

S.Ct. 2941, 2945, 97 L.Ed.2d 389 (1987).[8] Plaintiff's due process violation claim against the Department will therefore be dismissed.

In their motion, Defendants further assert the individual Defendants are entitled to Eleventh Amendment immunity as well, as they are sued only in their official capacities. (Defendants' Memo in Support, PP. 11-12). The Eleventh Amendment bars suits against state officials in their official capacities when, "the state is the real, substantial party in interest." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (internal quotations and citations omitted). Further, the state is the real party in interest if, "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." Id. at 102 n. 11 (internal quotations and citations omitted). Thus, a plaintiff cannot recover monetary damages in an official-capacity suit against a state official, as such an award would require an expenditure of state funds. Nix v. Norman, 879 F.2d 429, 432 (8th Cir. 1989). As stated above, in Count V of her Complaint Plaintiff seeks only monetary damages. (Compl., P. 8). Therefore, the Eleventh Amendment bars Plaintiff's claim of due process violation against Defendants Gammon, Thornburg, Dunseith, and Balty in their official capacities.[9] Count V is dismissed.

## IV. Conspiracy To Violate Due Process

---

[8] There exist two well-recognized exceptions to Eleventh Amendment immunity, as follows: first, Congress may statutorily abrogate such immunity; and second, a state may waive its own immunity to suit in federal court. Barnes, 960 F.2d at 64-65 (internal quotations and citations omitted). In the instant case, the Court finds Congress has not waived the State of Missouri's Eleventh Amendment immunity from suit for violations of the Fourteenth Amendment or 42 U.S.C. § 1983. See Barnes, 960 F.2d at 65 (citation omitted). Further, Plaintiff does not allege that Defendant itself has waived its Eleventh Amendment immunity in this instance.

[9] As further support for its holding, the Court notes that in an official-capacity action for money damages, a state official is not a person within the meaning of §1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

In Count VI of her Complaint, Plaintiff alleges Defendants Gammon, Thornburg, Dunseith, and Balty, as agents of the Department, conspired to violate Plaintiff's right to due process. (Compl., ¶ 30). Plaintiff seeks relief in the form of compensatory and punitive damages from the Department, and from Defendants Gammon, Thornburg, Dunseith, and Balty in both their individual and official capacities. (Compl., PP. 8-9).[10]

Before considering whether Plaintiff has established that the individual Defendants conspired to violate her due process rights, the Court must first consider whether Plaintiff has successfully alleged the violation of a constitutional right in the first place. The Eighth Circuit has held that, "[a] liberty interest may be implicated when a governmental employer makes statements that may seriously damage the employee's good name." Coleman v. Reed, 147 F.3d 751, 754-55 (8th Cir. 1998) (citation omitted). "A deprivation of constitutional magnitude may occur if such an employee is not granted the opportunity to clear his or her name." Id. (citation omitted).

> Therefore, in order to state a claim under section 1983 for denial of due process based on the loss of a protected liberty interest, [Plaintiff] must establish three things. First, she must show that the reason for her discharge stigmatized her. Second, she must show that the administrators made those reasons public....Finally, [Plaintiff] must establish that she denied the charges for which she was terminated.

Coleman, 147 F.3d at 755 (internal citations omitted). See also Putnam v. Keller, 332 F.3d 541, 546 (8th Cir. 2003).

Upon consideration, the Court finds Plaintiff fails to establish the second element of her liberty interest claim. Specifically, she fails to present any evidence that the named Defendants made the

---

[10] Plaintiff's conspiracy claim against the individual Defendants in their official capacities is dismissed for the reasons discussed in section III, supra. Plaintiff may bring a §1983 claim against the individual Defendants in their personal capacities, however, as "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983," and thus, "[t]he Eleventh Amendment does not bar such suits..." Hafer v. Melo, 502 U.S. 21, 31, 112 S.Ct. 358, 365, 116 L.Ed.2d 301 (1991).

reasons for her discharge public. (See Plaintiff's Opp., P. 11 ("Whether the Defendants actively published the information is unknown")). Rather, at best Plaintiff asserts that Defendants, in their positions as supervisors, failed to prevent the alleged dissemination of stigmatizing information (Defendants' Facts, ¶¶ 52-53, citing Govan Dep., PP. 133-36), and it is well established that respondeat superior cannot form the basis for liability under section 1983. Grundy v. Norris, 26 Fed. Appx. 588, 590 (8th Cir. 2001), citing Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997).

Having disposed of Plaintiff's underlying due process claim, the Court now turns to Plaintiff's claim of conspiracy. In order to prove a § 1983 conspiracy claim against a particular defendant, Plaintiff must show: "that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999) (citations omitted). As stated above, Plaintiff admits she has no evidence that any one of the named Defendants made the reasons for her discharge public. (Plaintiff's Opp., P. 11). Plaintiff thus fails to establish that, "at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy," Id., and so Count VI of her Complaint must be dismissed.

## V. Defamation

In Count VII of her Complaint, Govan alleges as follows:

32. In connection with Plaintiff's discharge, Defendant [the Department], by its agents, and Gammon, Thornburg, Dunseith and Balty made allegations that Plaintiff had engaged in sexual activities with an inmate at MCC.

33. Defendant [the Department], by its agents, and Gammon, Thornburg, Dunseith and Balty made said false statements with knowledge of their falsity or with reckless disregard for whether the statements were true or false at a time when Defendant, by its agents, had serious doubt as to whether the statements were true.

34. Plaintiff's reputation in the community was damaged thereby.

(Compl., ¶¶ 32-34). Plaintiff seeks relief in the form of compensatory and punitive damages from the Department, and from Defendants Gammon, Thornburg, Dunseith, and Balty in both their individual and official capacities. (Compl., P. 9).[11]

In order to make a submissible claim of defamation in Missouri, Govan must establish the following elements: "(1) publication, (2) of a defamatory statement, (3) which identifies the plaintiff, (4) that is false, (5) that is published with a requisite degree of fault and (6) damages the plaintiff's reputation." Ruzicka Elec. and Sons, Inc. v. International Broth. of Elec. Workers, 427 F.3d 511, 522 (8th Cir. 2005) (internal quotations and citation omitted); see also Gray v. AT&T Corp., 357 F.3d 763, 765 (8th Cir. 2004) (same).

Upon consideration, the Court finds Govan fails to establish several elements of her claim of defamation. For example, with respect to the first element, publication, "a person publishes a defamatory statement by communicating the defamatory matter to a third person." Gray, 357 F.3d at 765-66 (citation omitted). In the instant case, Plaintiff admits she has no evidence the individual Defendants published the statements at issue. (See Plaintiff's Facts, ¶¶ 48-51 ("Govan admits that individual defendants did not specifically tell anyone that Govan had confessed to the allegations against her"); Plaintiff's Opp., P. 11 ("Whether the Defendants actively published the information is unknown")). Further, because Plaintiff has no evidence these Defendants published the statements, she necessarily cannot prove element five, that the statements were published with the requisite

---

[11] Plaintiff's defamation claim against the Department, and against the individual Defendants in their official capacities, is dismissed for the reasons discussed in section III, supra.

degree of fault.[12]  Defendants' Motion for Summary Judgment on Plaintiff's defamation claim will

therefore be granted.

## VI.    Whistleblower Statute

In Count VIII of her Complaint, Govan alleges as follows:

36.    Plaintiff disclosed information which she reasonably believed to evidence
violations of law, rule or regulation with regard to medical treatment to be
provided to inmates.

37.    Plaintiff disclosed information which she reasonably believed to evidence
mismanagement.

38.    Defendant [the Department] took disciplinary action against Plaintiff as a
result of her disclosure of the information which she reasonably believed to
evidence violations of law, rule or regulation with regard to medical treatment
to be provided to inmates.

(Compl., ¶¶ 36-38).  Plaintiff seeks relief in the form of compensatory and punitive damages from the

Department, and from Defendants Gammon, Thornburg, Dunseith, and Balty in their official

capacities.  (Compl., P. 10).

In their Motion for Summary Judgment, Defendants assert that the Eleventh Amendment bars

Plaintiff's whistleblower statute violation claim against the Department.  (Defendants' Memo in

Support, PP. 14-15).  As stated above, the Eighth Circuit has held that, "[t]he Eleventh Amendment

bars a citizen from bringing suit for monetary damages against a state in federal court."  Barnes, 483

U.S. at 468.  Further, the Court finds the individual Defendants are entitled to Eleventh Amendment

---

[12] The requisite degree of fault for a private figure is negligence, or, to recover punitive damages, malice.  Overcast v. Billings Mutual Ins. Co., 11 S.W.3d 62, 70 (Mo. 2000) (citation omitted).  For a public figure, a plaintiff must show, "that the defendant published the statement either with knowledge of its falsity or with reckless disregard for whether it was true or false at a time when defendant had serious doubts as to whether it was true."  Reliance Ins. Co. v. Shenandoah South, Inc., 81 F.3d 789, 792 (8th Cir. 1996) (citation omitted).  The Court need not consider whether Govan, as a prison chaplain, was a public or private figure, as without evidence of publication, she cannot establish the requisite degree of fault under either standard.

immunity as well, as they are sued in their official capacities for monetary damages only.  See

Pennhurst State School & Hosp. v. Halderman, 465 U.S. at 101 (internal quotations and citations

omitted) (The Eleventh Amendment bars suits against state officials in their official capacities when,

"the state is the real, substantial party in interest.").   Therefore, the Eleventh Amendment bars

Plaintiff's whistleblower statute violation claim against Defendants Gammon, Thornburg, Dunseith,

and Balty in their official capacities.  Count VIII is dismissed.[13]

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. No.

88) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment with respect

to Plaintiff's claims of gender and race discrimination in the terms and conditions of her employment

is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment with respect

to Plaintiff's claims of gender and race discrimination in her discharge is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment with respect

to Plaintiff's claims of retaliation is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment with respect

to Plaintiff's due process violation claim is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment with respect

to Plaintiff's conspiracy to violate due process claim is **GRANTED**.

---

[13] The Court notes without deciding that it is unlikely Plaintiff could sustain a claim under Missouri Revised Statute Section 105.055 in any event, as it appears her original complaint in this matter was filed outside the statute of limitations.  See Mo. Rev. St. § 105.055(7)(1).

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment with respect to Plaintiff's defamation claim is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment with respect to Plaintiff's whistleblower statute violation claim is **GRANTED**.

Dated this 9th day of December, 2005.


/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE